UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BURGH INVESTMENTS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **No. 24-2339** |
| **WILLIAM RICHARD BURK, III** | **SECTION I** |

### ORDER AND REASONS

Before the Court are two motions to dismiss. The first is third-party defendants William Burk, IV's ("Billy Burk"); Burk Property Investments, L.L.C.'s ("BPI"); and Louque Place, L.L.C.'s ("Louque Place") (collectively, the "Billy Burk affiliates") motion[1] to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. Defendant and third-party plaintiff William Richard Burk, III ("Biff Burk") filed a response.[2] The Billy Burk affiliates filed a reply.[3]

The second motion is third-party defendant Sarah Lazaro's motion[4] to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of jurisdiction and failure to state a claim. Biff Burk filed a response,[5] and Sarah Lazaro filed a reply.[6]

For the reasons that follow, the Court grants the Billy Burk affiliates' and Sarah Lazaro's motions to dismiss based on lack of jurisdiction. Accordingly, the

---

[1] R. Doc. No. 16.
[2] R. Doc. No. 22.
[3] R. Doc. No. 25.
[4] R. Doc. No. 21.
[5] R. Doc. No. 24.
[6] R. Doc. No. 27.

Court declines to analyze Sarah Lazaro's arguments regarding Rule 12(b)(6). Because the reasons that support dismissal for lack of jurisdiction with respect to the Billy Burk affiliates and Sarah Lazaro also apply to certain claims against Jacquelyn Burk, the Court *sua sponte* dismisses certain claims against her as described herein.

## I. BACKGROUND

The allegations in the original complaint filed by plaintiff Burgh Investments, Inc. ("Burgh Investments") concern Biff Burk's alleged failure to make payments owed to Burgh Investments pursuant to a Home Equity Line of Credit ("HELOC") agreement.[7] When Biff Burk executed a HELOC in January 2015,[8] Burgh Investments alleges that Biff Burk "agreed to a credit account arrangement where he was bound to pay back advances, interest, and other charges to the Bank of New Orleans" or any other person or entity to whom the Bank of New Orleans assigned the HELOC agreement.[9]

In its complaint, Burgh Investments alleges that it purchased the rights pursuant to the HELOC agreement and that Biff Burk was required to make minimum payments on the account, which payments he failed to make.[10] Burgh Investments states that because Biff Burk allegedly failed to make required minimum payments, the HELOC agreement allows Burgh Investments to terminate the account and require Biff Burk to pay the entire outstanding balance as well as

---

[7] R. Doc. No. 1, ¶¶ 6–11.
[8] *Id.* ¶ 6; R. Doc. No. 5, at 2.
[9] R. Doc. No. 1, ¶ 6.
[10] *Id.* ¶¶ 8, 11.

2

reasonable costs it incurred to collect the balance.[11] Burgh Investments thereby prays for judgment in its favor for the amount owed pursuant to the HELOC agreement, additional interest, costs, and attorney's fees.[12]

In addition to his answer, Biff Burk filed a third-party complaint against his ex-wife Jacquelyn Burk, the Billy Burk affiliates, and Sarah Lazaro.[13] The claims alleged in the third-party complaint concern three promissory notes and begin several years before those claims alleged in the original complaint filed by Burgh Investments.

First, Biff Burk alleges that he opened a line of credit for $400,000 with Regions Bank in 2008, which was secured against his former residence and the current residence of Jacquelyn Burk.[14] Biff Burk states that he established this line of credit to help his son, Billy Burk, recover from business setbacks that he sustained as a result of Hurricane Katrina.[15] Billy Burk allegedly agreed to pay the minimum monthly interest each month and to pay down the $400,000 loan over time as memorialized in a separate promissory note dated February 25, 2008.[16] The third-party complaint states that this promissory note was secured by a mortgage on a property, which was owned at the time by Louque Place, transferred to Burk Real Estate, and then sold again.[17] Biff Burk further states that Billy Burk is the

---

[11] *Id.* ¶¶ 12–13.
[12] *Id.* at 3–4.
[13] R. Doc. No. 5, at 5–6.
[14] *Id.* at 7.
[15] *Id.*
[16] *Id.*
[17] *Id.* at 7–8.

managing member of Louque Place and that he is a member of Burk Real Estate.[18] Biff Burk contends that he never received any money from the $400,000 line of credit.[19]

When Biff Burk executed the HELOC agreement in January 2015, which agreement is the subject of the original complaint,[20] Biff Burk contends that he and his then-wife Jacquelyn Burk established this second line of credit with Bank of New Orleans for $900,000, which was secured by a mortgage on his former residence.[21] Biff Burk used this $900,000 line of credit to pay off the balance of the first $400,000 line of credit with Regions Bank and gave the additional $500,000 to Billy Burk, who is in the real estate business, for the purposes of building a new home for his daughter Sarah Lazaro.[22] For the second promissory note at issue in the third-party complaint, Biff Burk states that Billy Burk and Sarah Lazaro agreed to pay the minimum monthly interest on the $900,000 and to pay down the loan over time.[23] They also allegedly agreed to use the proceeds from the sale of Sarah Lazaro's old home to pay down the $900,000 line of credit once her new house was complete.[24] Biff Burk contends that the proceeds from the sale of Sarah Lazaro's old home were never used to pay down the $900,000.[25]

---

[18] *Id.*
[19] *Id.* at 8.
[20] *Id.* at 8–9; *cf.* R. Doc. No. 1, ¶ 6.
[21] R. Doc. No. 5, at 8–9.
[22] *Id.*
[23] *Id.* at 9.
[24] *Id.*
[25] *Id.* at 9–10.

Finally, Biff Burk states that he and Jacquelyn Burk established a third line of credit from the Bank of New Orleans in March or April of 2015 for $500,000.[26] This line of credit was secured by a mortgage on a commercial property owned by Burk Holding Co. Inc., of which Biff Burk is the president.[27] Again, this loan was allegedly to assist Billy Burk with his business.[28] The third promissory note at issue in the third-party complaint concerns an alleged promise that Billy Burk made to pay the minimum monthly interest on the $500,000 line of credit and to pay down the principal over time.[29] Biff Burk contends that he has never received any of the money from the $500,000 line of credit.[30]

With respect to his claims against Jacquelyn Burk, Biff Burk states that he and Jacquelyn Burk entered a consent judgment and settlement of claims as a part of their divorce on July 26, 2016.[31] As part of that agreement, Biff Burk states that he and Jacquelyn Burk agreed to each assume responsibility for half of the debt owed on the $900,000 and $500,000 loans.[32] Jacquelyn has allegedly failed to discharge her obligations with respect to these loans.[33]

On this basis, Biff Burk brings claims for breach of contract, quantum meruit, unjust enrichment, and declaratory relief.[34] The third-party complaint asserts that

---

[26] *Id.* at 10.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.* at 10–11.
[32] *Id.* at 11.
[33] *Id.* at 12.
[34] *Id.* at 13–15.

the Court has supplemental jurisdiction over Biff Burk's claims pursuant to 28 U.S.C. § 1367(a).[35] This statute provides that, in cases where the federal court has original jurisdiction, the court likewise has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Biff Burk does not allege in his third-party complaint or in his responses to the motions to dismiss that there is another basis from which the Court has jurisdiction over his claims.

The Billy Burk affiliates and Sarah Lazaro[36] allege in their motions to dismiss that this Court lacks supplemental jurisdiction over Biff Burk's claims against them because these claims and the claims in the Burgh Investments complaint do not arise from the same case or controversy.[37] In particular, the Billy Burk affiliates point to the fact that only Jacquelyn Burk is alleged to be a co-obligor to the HELOC as alleged in the original complaint.[38] Nor, the Billy Burk affiliates point out, is anyone other than Jacquelyn Burk alleged to be a co-obligor to any of the other lines of credit established by Biff Burk.[39] Further, they argue that the third line of credit for $500,000 appears to have no factual relationship to the HELOC agreement alleged

---

[35] *Id.* at 5.
[36] Sarah Lazaro's motion to dismiss sets forth no independent reasons why this Court lacks supplemental jurisdiction over Biff Burk's claims against her. Instead, her motion incorporates the arguments as set forth in the Billy Burk affiliates' motion to dismiss and merely adds her arguments pursuant to Rule 12(b)(6). *See generally* R. Doc. No. 21-1.
[37] R. Doc. No. 16-1, at 2.
[38] *Id.* at 8.
[39] *Id.*

6

in the original complaint.[40] Biff Burk's response argues that there is no requirement that the Billy Burk affiliates or Sarah Lazaro be co-obligors to the various lines of credit for the Court to have federal jurisdiction over his claims.[41] Additionally, he contends that there are a substantial number of factual issues shared by all claims such that they amount to the same case and controversy.[42]

## II.   STANDARD OF LAW

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). "[A] claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Id.* (citation omitted). Courts are to consider a Rule 12(b)(1) jurisdictional argument before addressing any other arguments on the merits. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

When ruling on a Rule 12(b)(1) motion, a court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010) (quoting *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315

---

[40] *Id.*
[41] R. Doc. No. 22, at 9.
[42] *Id.* at 10–11.

(5th Cir. 2009)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not ordinarily prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

### III.   ANALYSIS

Biff Burk does not argue that there is an independent basis of federal subject matter jurisdiction over his counterclaims. His claims against the Billy Burk affiliates and Sarah Lazaro must therefore be dismissed unless they come within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). The supplemental jurisdiction statute provides in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

The question that courts must consider when analyzing jurisdiction pursuant to 28 U.S.C. § 1367(a) is whether the supplemental claims are so related to the original claims that they form part of the same case or controversy such that one would expect the claims to be tried in a single judicial proceeding, or in other words, that they "derive from a common nucleus of operative fact." *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). "[S]upplemental jurisdiction is not appropriate merely because the claims are tangentially related or share a broad

8

factual background." *Lawrence v. Jefferson Par. Pub. Defs.*, No. CV 20-1615, 2021 WL 1733996, at *4 (E.D. La. May 3, 2021) (Morgan, J.) (quotation and citation omitted).

A supplemental claim shares a common nucleus of operative fact with the original claim when the supplemental claim "bears a logical relationship to the aggregate core of operative facts which constitutes the main claim over which the court has an independent basis of federal jurisdiction." *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.*, 426 F.2d 709, 714 (5th Cir. 1970). Supplemental claims can have a logical relationship to the core facts of the original claim in two senses: "(1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant." *Id.* at 715.

Biff Burk argues that both the $400,000 promissory note between himself and Billy Burk as well as the $900,000 promissory note between himself, Billy Burk, and Sarah Lazaro concern who was responsible to pay off the HELOC alleged in the original complaint.[43] Biff Burk thereby argues that these claims concern the same factual issues and are so related that they amount to the same case or controversy.[44] With respect to the $500,000 promissory note between Biff Burk and Billy Burk, Biff Burk states that claims regarding this note are sufficiently related because they

---

[43] R. Doc. No. 22, at 10.
[44] *Id.*

9

involve the same parties and the same facts regarding Billy Burk's alleged failure to pay.[45]

The Court disagrees. Biff Burk has failed to demonstrate a common nucleus of operative facts between the claims alleged in the original complaint and his claims against the Billy Burk affiliates and Sarah Lazaro. While the claims regarding the $400,000 and $900,000 promissory notes share some background facts with the original complaint, each of the promissory notes alleged appear to be independent transactions from the HELOC agreement. The parties do not dispute that the Billy Burk affiliates and Sarah Lazaro are not co-obligors pursuant to the HELOC agreement.[46] Nor does Biff Burk allege that the promissory notes in any way reference or tie their obligations to the HELOC agreement, such as by creating a surety or guarantor agreement. In addition, the claims regarding the $500,000 line of credit appear to have no factual relationship to those in the original complaint aside from the fact that they involve the same parties.

Accordingly, there is no ground for the Court to conclude that Biff Burk's claims against Billy Burk and Sarah Lazaro rely on the same operative facts that form the basis of the original complaint. All claims share some general background facts. However, Biff Burk has failed to inform this Court of a way in which there is any legal significance to the facts shared between the HELOC agreement claims in the original complaint and the claims against the Billy Burk affiliates and Sarah

---

[45] *Id.* at 10–11.
[46] *See id.* at 9.

10

Lazaro in the third-party complaint. Nor does the Court have a basis from which it can conclude that the same facts forming the basis of the original complaint activate additional legal rights or defenses that would otherwise remain dormant for Biff Burk regarding the claims alleged in his third-party complaint. *See Revere Copper & Brass, Inc.*, 426 F.2d at 715. The third-party claims against the Billy Burk affiliates and Sarah Lazaro must therefore be dismissed.

For the same reasons that the Court dismisses the claims against the Billy Burk affiliates and Sarah Lazaro regarding the $500,000 line of credit, the Court must likewise dismiss any claims against Jacquelyn Burk related to the same. Whenever a lack of subject matter jurisdiction is perceived, the court has a duty to address the issue *sua sponte*. *Dominguez-Cota v. Cooper Tire & Rubber Co.*, 396 F.3d 650, 652 n.1 (5th Cir. 2005). The claims related to the $500,000 line of credit have no factual relationship to the claims alleged in the original complaint other than the fact that they involve the same parties. However, as an alleged co-signer to the HELOC agreement that is the subject of the original complaint, the Court clearly has supplemental jurisdiction over Biff Burk's claims against Jacquelyn Burk regarding the $900,000 line of credit.

The Court therefore dismisses all of Biff Burk's claims against the Billy Burk affiliates and Sarah Lazaro. The Court likewise dismisses Biff Burk's claims against Jacquelyn Burk with respect to the $500,000 line of credit alleged in the third-party complaint. The remaining claims in this matter are Burgh Investments's claims against Biff Burk as alleged in the original complaint as well as Biff Burk's claims

11

against Jacquelyn Burk regarding the $900,000 line of credit as alleged in the third-party complaint.

## IV.     CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Billy Burk affiliates' and Sarah Lazaro's motions[47] to dismiss are **GRANTED**. Biff Burk's third-party claims against the Billy Burk affiliates and Sarah Lazaro are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Biff Burk's third-party claims against Jacquelyn Burk regarding the $500,000 line of credit are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that the Billy Burk affiliates' motion[48] to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **DISMISSED AS MOOT**.

New Orleans, Louisiana, February 26, 2025.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[47] R. Doc. No. 16; R. Doc. No. 21.
[48] R. Doc. No. 34.