# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BURGH INVESTMENTS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **No. 24-2339** |
| **WILLIAM RICHARD BURK, III** | **SECTION I** |

## ORDER AND REASONS

Before the Court is third-party defendant Jacquelyn Burk's motion[1] to dismiss third-party plaintiff Biff Burk's claims against her on the ground of *forum non conveniens*. Biff Burk filed a response[2] in opposition, and Jacquelyn Burk filed a reply.[3] For the reasons set forth below, the Court denies Jacquelyn Burk's motion to dismiss.

## I. BACKGROUND

This case arises out of Biff Burk's alleged failure to make payments due to plaintiff Burgh Investments, Inc. ("Burgh Investments") pursuant to a Home Equity Line of Credit ("HELOC").[4] Biff Burk executed a HELOC agreement in January 2015.[5] Burgh Investments alleges that Biff Burk thereby "agreed to a credit account arrangement where he was bound to pay back advances, interest, and other charges to the Bank of New Orleans" or any other person or entity to whom the Bank of New

---

[1] R. Doc. No. 20.
[2] R. Doc. No. 23.
[3] R. Doc. No. 26.
[4] R. Doc. No. 1, ¶¶ 6–11.
[5] *Id.* ¶ 6; R. Doc. No. 5, at 2.

Orleans assigned the HELOC agreement.[6] Biff Burk made draws from the HELOC account.[7] In its complaint, Burgh Investments alleges that it purchased the rights pursuant to the HELOC agreement and that Biff Burk was required to make minimum payments on the account, which payments he failed to make.[8] Burgh Investments states that because Biff Burk allegedly failed to make the required minimum payments, the HELOC agreement allows Burgh Investments to terminate the account and require Biff Burk to pay the entire outstanding balance as well as reasonable costs it incurred to collect the balance.[9]

In addition to his answer, Biff Burk filed a third-party complaint against his ex-wife Jacquelyn Burk and other parties.[10] Relevant to this motion, Biff Burk states that Jacquelyn Burk cosigned the HELOC agreement for a $900,000 line of credit.[11] Biff and Jacquelyn Burk divorced on July 26, 2016, and they thereby entered a consent judgment and settlement of claims (the "consent judgment").[12] As part of that agreement, Biff Burk states that he and Jacquelyn Burk agreed to each assume responsibility for half of the debt owed on the $900,000 loan.[13] Jacquelyn has allegedly failed to discharge her obligations with respect to this loan.[14]

---

[6] R. Doc. No. 1, ¶ 6.
[7] *Id.* ¶ 8; R. Doc. No. 5, at 2.
[8] R. Doc. No. 1, ¶¶ 8, 11.
[9] *Id.* ¶¶ 12–13.
[10] R. Doc. No. 5, at 5–6.
[11] *Id.* at 8–9. The Court previously dismissed Biff Burk's claims against Jacquelyn Burk related to another loan for lack of subject matter jurisdiction. *See* R. Doc. No. 26.
[12] R. Doc. No. 5, at 10–11; *see* R. Doc. No. 5-2.
[13] R. Doc. No. 5, at 11.
[14] *Id.* at 12.

In her motion to dismiss, Jacquelyn Burk argues that the consent judgment contained a mandatory venue clause.[15] This provision states that "[a]ny disputes whatsoever arising between the parties concerning the receivable and the obligation to pay the loans referenced [in the consent judgment] shall be resolved on Rule to Show Cause filed by either party, and both will cooperate in setting the Rule for hearing."[16] Jacquelyn Burk therefore argues that because Biff Burk's claims against her concern obligations to pay on a loan, which obligations are described in the consent judgment, that his claims against her must be dismissed pursuant to the doctrine of *forum non conveniens* and pursued in state court.[17]

Biff Burk argues that the forum-selection clause in the consent judgment is at most permissive and is intended to "promote efficiency and save resources should a dispute arise between the parties to the divorce."[18] As a permissive forum-selection clause, Biff Burk argues that the parties have merely "consented to the continued personal jurisdiction" of the Louisiana state court "for matters concerning the [consent judgment]."[19] It does not indicate an intent that the state court is to be the exclusive forum of adjudication for matters concerning the HELOC loan.[20]

---

[15] R. Doc. No. 20, at 1.
[16] R. Doc. No. 5-3, at 2.
[17] R. Doc. No. 20-1, at 1–2.
[18] R. Doc. No. 23, at 7.
[19] *Id.* at 8–9.
[20] *Id.* at 9.

## II. STANDARD OF LAW

"[T]he doctrine of *forum non conveniens* proceed[s] from [the] premise [that] . . . [i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996). Before dismissing a case for *forum non conveniens*, a court must first determine whether an available and adequate foreign forum exists. *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1165 (5th Cir. 1987). An available and adequate forum is one in which all parties are subject to jurisdiction, the entire case can be heard, and all parties will be treated fairly. *Id.*

Second, if an adequate forum is available, "the court must determine which forum is best suited to the litigation." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007). "In performing this second step, a court must consider whether 'certain private and public interest factors weigh in favor of dismissal.'" *Id.* (quoting *McLennan v. Am. Eurocopter Corp., Inc.*, 245 F.3d 403, 424 (5th Cir. 2001)). The private-interest factors include

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert*. 330 U.S. 501, 508 (1947). Courts may also consider the enforceability of any judgment that may be obtained. *Id.*

The relevant public-interest factors include the administrative difficulties caused by crowded dockets, the burden of imposing jury duty on citizens of a forum

4

with no relation to the dispute, the local interest in having localized controversies decided in that locality, and the appropriateness of deciding diversity cases in the forum whose law provides the substantive rules of decision. *Id.* at 508–09. The court must bear in mind that "the ultimate inquiry is where trial will best serve the convenience of the parties and the interests of justice." *In re Air Crash*, 821 F.2d at 1162 (quoting *Koster v. Am. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947)).

The party seeking dismissal "bears the burden of invoking the doctrine and moving to dismiss in favor of a foreign forum." *In re Air Crash*, 821 F.2d at 1164. "This burden of persuasion runs to all the elements of the forum non conveniens analysis." *Id.*

However, in "the presence of a mandatory, enforceable forum-selection clause," courts consider the private-interest factors to weigh entirely in favor of the pre-selected forum and afford the plaintiff's choice of forum no weight. *Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 248 (5th Cir. 2023). Courts "apply a 'strong presumption' in favor of enforcing mandatory forum-selection clauses," which can be overcome only by a "clear showing that the clause is 'unreasonable.'" *Id.* "Hence, a valid forum-selection clause controls the *forum non conveniens* inquiry in all but the most unusual cases." *Id.* (internal quotation and citation omitted).

Prior to undertaking the *forum non conveniens* analysis, courts must determine "[whether] the forum-selection clause is both mandatory and enforceable." *See id.* at 249. "To be mandatory, a forum-selection clause must contain 'exclusive

5

language,'" and it "must show that the parties intended the named location to serve as the forum for disputes arising out of the contract." *Bustos v. Dennis*, No. SA-17-CV-39-XR, 2017 WL 1049570, at *2 (W.D. Tex. Mar. 17, 2017).

### III. ANALYSIS

The consent judgment provides that "[a]ny disputes whatsoever arising between the parties concerning the receivable and the obligation to pay the loans referenced [in the consent judgment] shall be resolved on Rule to Show Cause filed by either party, and both will cooperate in setting the Rule for hearing."[21] The primary contention between the parties here concerns whether this clause is exclusive—providing that the consent judgment may only be enforced in the state court that entered it—or permissive—subjecting the parties to the continued jurisdiction of the state court but allowing the parties to enforce the consent judgment in another forum. Jacquelyn Burk argues that the forum-selection clause compels dismissal pursuant to the doctrine of *forum non conveniens*.[22] She does not argue that the public- and private-interest factors warrant dismissal even in the absence of a mandatory and enforceable forum-selection clause.

Biff Burk argues that the language in the consent judgment is permissive despite the presence of the word "shall," which ordinarily amounts to mandatory language.[23] Specifically, Biff Burk points to *Caldas & Sons, Inc. v. Willingham*[24] in

---

[21] R. Doc. No. 5-3, at 2.
[22] R. Doc. No. 20-1, at 2.
[23] R. Doc. No. 23, at 7–8.
[24] *Id.*

6

which the Fifth Circuit analyzed a forum-selection clause stating that "[t]he law and courts of Zurich shall be applicable." 17 F.3d 123, 127 (5th Cir. 1994). In that case, the district court concluded that the clause was permissive, merely providing that Zurich courts would have jurisdiction over the claims, despite the presence of the word "shall." *Id*. The Fifth Circuit affirmed that decision, concluding that the language of the clause did not "clearly indicate that the parties intended to declare Zurich to be the exclusive forum for the adjudication of disputes arising out of the contract." *Id*. at 128.

Jacquelyn Burk argues without citation that the clear language ordinarily required for a mandatory and exclusive forum-selection clause is not required in a consent judgment.[25] Looking at the language of the consent judgment, Jacquelyn Burk maintains that it amounts to a "specific enforcement mechanism chosen by the parties" and does not amount to a choice of forum so much as a "prescribed method for resolving disputes."[26]

None of the cases cited by Biff Burk regarding the clear language requirement involve a consent judgment. Yet Jacquelyn Burk has likewise failed to cite to any cases applying the doctrine of *forum non conveniens* to the provisions of a consent judgment, and the Court is unaware of any cases in the Fifth Circuit addressing this question. Nonetheless, the Fifth Circuit has stated that "general principles of contract interpretation govern" when interpreting a consent judgment. *Dean v. City of*

---

[25] R. Doc. No. 26, at 1–2.
[26] *Id*. at 2.

*Shreveport*, 438 F.3d 448, 460 (5th Cir. 2006). The Court therefore finds no basis to conclude that a forum-selection clause in a consent judgment is held to a lower standard of clarity than a forum-selection clause in a contract.

With the relevant rules of interpretation established, the Court concludes that the forum-selection clause in the consent judgment is not mandatory. "For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive." *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004).

Here, the language of the forum-selection clause does not clearly and unambiguously indicate an intent to make Louisiana state court the exclusive forum to litigate disputes that touch on aspects of the consent judgment. At most, the clause clearly indicates a particular procedure to enforce the consent judgment when said enforcement is sought in the Civil District Court for the Parish of Orleans. The word "shall" in the forum-selection clause refers to a mandatory procedure for enforcement actions brought in that state court rather than referring to a mandatory forum. Furthermore, the forum-selection clause "does nothing to exclude any other potential jurisdictions." *See Arkel Intl., L.L.C. v. Parsons Glob. Servs., Inc.*, No. CV 07-474-FJP-DLD, 2008 WL 11413369, at *6 (M.D. La. Jan. 8, 2008). The Court therefore concludes that the forum-selection clause in the consent judgment provides no basis to dismiss this matter.

8

Jacquelyn Burk has also not demonstrated that dismissal on the ground of *forum non conveniens* is nonetheless warranted without a mandatory forum-selection clause. While she has demonstrated that state court provides an adequate and available forum, she has not made any arguments supporting a conclusion that the private- and public-interest factors favor dismissal.

With respect to the private-interest factors, there appears to be no significant difference between the Civil District Court for the Parish of Orleans and the U.S. District Court for the Eastern District of Louisiana. There is no indication that factors such as access to evidence or the availability of witnesses would be more difficult in federal court. *See Gulf Oil Corp. v. Gilbert*. 330 U.S. 501, 508 (1947). With respect to the public-interest factors—including burdens on juries and the interest in deciding local issues locally in a forum at home with the law—the Court likewise sees no significant differences between this Court and state court such that dismissal would be justified. Although this Court's docket may be less crowded than the docket in the state court, that fact alone does not form the basis of the Court's decision.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Jacquelyn Burk's motion to dismiss based on the doctrine of *forum non conveniens* is **DENIED**.

New Orleans, Louisiana, March 18, 2025.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**