UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BURGH INVESTMENTS, INC. | * | CIVIL ACTION |
| VERSUS | * | NO. 24-2339 |
| WILLIAM RICHARD BURK, III | * | SECTION "I" (2) |

### ORDER AND REASONS

Pending before me is non-party William R. Burk IV's Motion to Quash and for Protective Order. ECF No. 44. Defendant William Richard Burk III filed an Opposition Memorandum, and movant filed a Reply Memorandum. ECF Nos. 54, 59. No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, non-party William R. Burk IV's Motion for to Quash and for Protective Order is GRANTED for the reasons stated herein.

I.     **BACKGROUND**

Defendant/Third-Party Plaintiff William Richard Burk III ("Biff") executed a home equity line of credit on January 13, 2015, in favor of Bank of New Orleans. (the "HELOC") ECF No. 1 ¶ 6; No. 1-2. Home Bank, N.A., became the holder and owner of the HELOC on September 15, 2015. ECF No. 1 ¶ 7. After Home Bank issued a delinquency notice on August 13, 2024, it assigned the HELOC to Plaintiff Burgh Investments, Inc. *Id.* ¶¶ 9-11; *see also* ECF Nos. 1-3 – 1-6. Burgh Investments filed suit to recover the full balance owed, with interest, on September 26, 2024. ECF No. 1 ¶ 12-14.

Biff filed an Answer and Third-Party Demand on October 29, 2024, naming William Richard Burk, IV ("Burk IV"), Sarah Burk Lazaro, Jacquelyn J. Burk, Louque Place, L.L.C., and Burk Property Investments, L.L.C. as third-party defendants and asserting breach of contract,

1

quantum meruit, and unjust enrichment claims, as well as seeking declaratory relief that Burk IV and Sarah Burk Lazaro are obligated to repay the HELOC.  ECF No. 5 at 5, 13-15.  Biff contends that he and his ex-wife Jacquelyn opened a $400,000 line of credit with Regions Bank in 2008 and used those funds to help their son recover from Hurricane Katrina setbacks.  ECF No. 65-1 at 1-2.  In 2015, Biff obtained a $900,000 loan from Home Bank, using $400,000 of that loan to pay off the Regions line of credit and using the remaining $500,000 to build a home for his daughter Sarah.  *Id.* at 2.  Biff and his ex-wife divorced and entered into a community property settlement.  *Id.* at 2-4.  Biff then filed suit in state court against Burk IV, after which Jacquelyn donated her home to Burk IV, and Burk IV created a new entity (Burgh Investments) to acquire the HELOC, which entity obtained funds for same through a loan secured by Jacquelyn's former home.  *Id.* at 4-5.

Judge Africk dismissed Biff's third-party claims against Burk IV, Sarah Burk Lazaro, Louque Place, L.L.C., and Burk Property Investments, L.L.C., but not claims against ex-wife Jacquelyn J. Burk, leaving only Biff's third-party claims against Jacquelyn as co-signer of the HELOC.  ECF Nos. 35, 39.  In his Amended Answer and Affirmative Defenses, Biff raises defenses of confusion, fraud and holder in due course.  ECF No. 53.  Biff alleges that Burgh Investments committed fraud in August 2024 when it acquired the HELOC based on Burk IV's failure to disclose that they were the beneficiaries of the loan, it is not a holder in due course because it knew the debt was overdue, and the debt has been extinguished by confusion.  *Id.* at 5-6.  During discovery, Biff issued a subpoena duces tecum to Crescent City Bank and Trust seeking documents related to Burk IV's $1 million loan dated August 29, 2024.  ECF No. 44-2.

II.     **THE MOTION TO QUASH/FOR PROTECTIVE ORDER**

Burk IV now files this Motion to Quash Biff's subpoena duces tecum issued to Crescent City Bank and Trust and requests a Protective Order precluding Biff from obtaining his banking

and financial documents.  ECF No. 44.  Burk IV states that he formed Burgh Investments in 2024, after which he acquired the HELOC from Home Bank.  ECF No. 44-1 at 2.

Burk IV argues he may seek to quash the subpoena because he has a personal interest in the privacy of his financial information, the documents sought are his personal banking records rather than the records of any party, and his personal banking records are not relevant to any claim or defense in this case.  ECF No. 44-1 at 2-6.  He also argues proportionality, and that a non-party's financial records are not relevant when the only relevant records regarding Burgh Investments' acquisition of the note are available from sources other than Crescent Bank.  *Id.* at 6-7.

In Opposition, Biff argues that Burk IV lacks standing to object to the subpoena on the grounds of relevancy and proportionality because he is not a party to the action, and documents regarding how Burk IV funded the acquisition of the HELOC is highly relevant to Biff's affirmative defenses of fraud, non-holder in due course, and confusion.  ECF No. 54 at 1, 3-6.  Biff contends that Jacquelyn donated the HELOC's collateral to Burk IV, and Burk IV used the collateral to secure a $1 million loan from Crescent Bank and then funneled the $1 million to his alter ego Burgh Investments, which used those funds to purchase the note.  *Id.* at 1.

In Reply, Burk IV asks that the Court not consider Biff's Exhibit 2 because same contains responses to requests for admission in another case, not in this case.  ECF No. 59 at 1-2.  He further argues that, if Burk IV has admitted to alter ego, then the banking documents are merely cumulative.  *Id.* at 2.  He also argues that his personal information is not relevant because Biff is not trying to pierce the corporate veil, Biff cannot state a claim for fraud, and holder in due course status is irrelevant because Burk IV has the original note.  *Id.* at 3-6.  Burk IV argues that confusion is not a viable defense either because Burk IV is not the debtor on the note and never signed the

3

note. *Id.* at 6-7. Burk IV further argues that Biff has conceded Burk IV's standing to quash the subpoenas and that he has not waived any privilege. *Id.* at 7-8.

## III. APPLICABLE LAW

### A. Scope of Discovery

Rule 26 of the Federal Rules of Civil Procedure authorizes the parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."[1] Rule 26(b)(2)(C) mandates that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery had ample opportunity to obtain the information; or (3) the proposed discovery is outside the scope of Rule 26(b)(1).[2]

The relevancy evaluation necessarily begins with an examination of the pending claims and defenses.[3] The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage.[4] This broader scope is necessary given the nature of litigation, where determinations of relevance for discovery purposes are made well

---

[1] FED. R. CIV. P. 26(b)(1).
[2] *Id.* at 26(b)(2)(C)(i)–(iii).
[3] *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, No. 02-3398, 2006 WL 378523, at *4 (E.D. La. Feb. 17, 2006) (Zainey, J.).
[4] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted).

4

in advance of trial; facts that are not considered in determining the ultimate issues may be eliminated in due course of the proceeding.[5] At the discovery stage, relevance includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[6] Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[7]

### B. <u>Motion to Quash</u>

Discovery may be obtained from non-parties pursuant to Rule 45 of the Federal Rules of Civil Procedure. A non-party served with a subpoena duces tecum may object by sending written objections to the issuing party within 14 days of service or before the return date, whichever is earlier.[8] If the non-party timely provides written objections, it has satisfied its obligations. The serving party may then file a motion to compel seeking compliance.[9]

Absent possession of the documents at issue or an alleged personal right or privilege with respect to the subpoenaed materials, a party generally does not have standing to quash a subpoena duces tecum issued to a third party.[10] A party generally "cannot challenge a Rule 45 subpoena directed to a third party on the basis that . . . the subpoena is overly broad, or that the subpoena seeks information that is irrelevant because only the responding third party can object and seek to

---

[5] *Id.* at 590 n.5 (citation and quotations omitted).
[6] *Id*. at 590 (citations omitted).
[7] *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017) (Morgan, J.) (citing *Merrill v. Waffle House, Inc*., 227 F.R.D. 467, 470 (N.D. Tex. 2005)).
[8] FED. R. CIV. P. 45(d)(2)(B).
[9] *Id.* at 45(d)(2)(B)(i).
[10] *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979) (citations omitted) (ruling movants lacked standing because they were not in possession of the materials subpoenaed and had no alleged personal right or privilege in the materials subpoenaed); *Bounds v. Cap. Area Fam. Violence Intervention Ctr., Inc.*, 314 F.R.D. 214, 218 (M.D. La. 2016) ("Parties have limited standing to quash subpoenas served on non-parties pursuant to Rule 45.") (citation omitted); *Black v. DMNO, LLC*, No. 16-02708, 2018 WL 488991, at *2 (E.D. La. Jan. 19, 2018) ("[I]n order to challenge the subpoena, the movant must be: in possession or control of the requested material; be the person to whom the subpoena is issued; or have a personal right or privilege in the subject matter of the subpoena.") (citations omitted).

quash a Rule 45 subpoena on those grounds."[11]  Rather, Rule 45 provides specific protections to non-parties that may only be enforced through objections by the non-party or a motion to quash a subpoena:  "[E]ither in lieu of or in addition to serving objections on the party seeking discovery, a person [served with a subpoena] can timely file a motion to quash or modify the subpoena under Federal Rule of Civil Procedure 45(d)(3)(A)."[12]

With regard to a motion to quash, Rule 45(d)(3)(A) provides:  "[O]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."[13]  Although governed in the first instance by Rule 45, non-party subpoenas are also subject to Rule 26.[14]  "Both Rules 45 and 26 authorize the court to modify a subpoena duces tecum when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45."[15]

The person filing the motion to quash bears the burden of proof to demonstrate that compliance would impose undue burden or expense.[16]  To determine whether the subpoena presents an undue burden, the Fifth Circuit considers the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party

---

[11] *Salmon v. Waffle House, Inc.*, No. 19-1349, 2020 WL 6708382, at *2 (E.D. La. Nov. 16, 2020) (citing *Frazier v. RadioShack Corp.*, No. 10-855, 2012 WL 832285, at *1 (M.D. La. Mar. 12, 2012)).
[12] *MetroPCS v. Thomas*, 327 F.R.D. 600, 607 (N.D. Tex. 2018) (internal quotations and citation omitted).
[13] *Id.* (quoting FED. R. CIV. P. 45(d)(3)(A)).
[14] *In re Application of Time, Inc.*, No. 99-2916, 1999 WL 804090, at *7 (E.D. La. Oct. 6, 1999) (citations omitted), *aff'd sub nom. In re Matter of Time Inc.*, 209 F.3d 719 (5th Cir. 2000).
[15] *Hahn v. Hunt*, No. 15-2867, 2016 WL 1587405, at *2 (E.D. La.) (citing FED. R. CIV. P. 45(d)(3); 26(c)(1)(D)), *aff'd*, 2016 WL 6518863 (E.D. La. Nov. 2, 2016).
[16] *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (citation omitted); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (citation omitted) (finding party resisting discovery must show why each discovery request is not relevant or otherwise objectionable).

describes the requested documents; and (6) the burden imposed.[17] "Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation."[18] "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party."[19] Modification of a subpoena is preferable to quashing it.[20]

IV. **ANALYSIS**

Biff argues that the HELOC was extinguished under the doctrine of confusion when Burk IV's alleged alter ego Burgh Investments acquired the HELOC because Biff used the HELOC funds to loan money to Burk IV. For that reason, Biff argues, alter ego discovery is relevant. That argument, however, reflects a fundamental misunderstanding of Louisiana's doctrine of confusion.

Setting aside whether the confusion applies based on an alter ego theory,[21] confusion only arises "[w]hen the qualities of obligee and obligor are united in the same person."[22] It requires the acquisition of full and perfect ownership of both sides of the same obligation.[23] And as the Fifth Circuit explained 25 years ago, confusion does not apply even when parties are both obligors and obligees of each other, but neither party is both obligor and obligee with respect to any one obligation.[24]

---

[17] *Wiwa*, 392 F.3d at 818 (internal citations omitted).
[18] *Id.* (citation omitted).
[19] *Id.* (citation omitted).
[20] *Id.*; *Tiberi v. CIGNA, Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994); *see also Linder v. Nat'l Sec. Agency*, 94 F.3d 693, 698 (D.C. Cir. 1996) ("[M]odification of a subpoena is generally preferred to outright quashing . . . .") (citation omitted).
[21] *See Hibernia Nat. Bank v. Antonini*, 862 So. 2d 331, 337 (La. App. 2 Cir. 2003).
[22] LA. CIV. CODE art. 1903.
[23] *See McAuslin v. Grinnell Corp.*, No. 97-775, 2000 WL 1191073, at *3 (E.D. La. Aug. 22, 2000) (Vance, J.); *HDRE Bus. Partners Ltd. Grp., L.L.C. v. Rare Hosp. Int'l, Inc.*, 484 F. App'x 875, 879 (5th Cir. 2012). Otherwise, confusion would extinguish only a portion of the obligation. LA. CIV. CODE art. 1905.
[24] *Worldwide Remediation, Inc. v. Onebane, Bernard, Torian, Diaz McNamara & Abell L. Firm*, 211 F.3d 948, 951 (5th Cir. 2000).

In this case, neither Burk IV nor Burgh Investments signed the HELOC note nor did either of them borrow money from Home Bank. Thus, neither Burk IV nor Burgh Investments is an obligor on the HELOC note. Accepting Biff's disputed factual assertions as true (i.e., Biff used the HELOC loan proceeds to then loan money to Burk IV (Burgh Investments' alter ego) and his sister), at most, Biff has established that Biff and Burk IV/Burgh Investments are mutual obligors and obligees of one another, but not that Burk IV/Burgh Investments is an obligor on the HELOC. Again, even Biff's alleged mutual obligor-obligee relationships do not render Burk IV/Burgh Investments the obligor on the HELOC note, as necessary for confusion. And while the doctrine of compensation (LA. CIV. CODE art. 1893) may apply once the competing mutual obligations are undisputed and liquidated, compensation is different from confusion and, because the mutual obligations are not both currently undisputed and liquidated, compensation does not apply.

Likewise, Burgh Investment's 2024 financial information is not relevant to Biff's holder in due course and fraud defenses. Burgh's alleged failure to disclose certain information to Home Bank in 2024 has no impact on whether Home Bank in fact loaned Biff $900,000, as reflected in the HELOC note. Nor is Burgh Investments' 2024 financial information relevant to its knowledge, as necessary to preclude holder in due course status, because knowledge of an agent is imputed to the principal even absent alter ego status.

### V.    CONCLUSION

Burgh Investments' banking and financial information, including its funding source when acquiring the HELOC loan from Home Bank in 2024, has no possible relevance to Plaintiff's suit to recover on the note nor is that financial information relevant to any of Defendant's defenses against the enforceability of that note. Rather, that information appears more directed to Biff's dismissed claims of a separate loan obligation between Biff and Burke IV (Burgh Investments'

alleged alter ego) pending in state court. Because the information sought is not relevant to any claim or defense in *this* case, the request falls outside of the parameters of Rule 26. Accordingly, for the foregoing reasons,

IT IS ORDERED that William R. Burk IV's Motion to Quash and for Protective Order is GRANTED.

New Orleans, Louisiana, this __12th__ day of May, 2025

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE