## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BURGH INVESTMENTS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **No. 24-2339** |
| **WILLIAM RICHARD BURK, III** | **SECTION I** |

## <u>ORDER AND REASONS</u>

Before the Court are two motions. The first is plaintiff Burgh Investments, Inc.'s ("Burgh Investments") motion[1] for summary judgment. Defendant and third-party plaintiff Biff Burk filed a response[2] in opposition, and Burgh Investments filed a reply.[3]

The second motion is William Richard Burk, III's ("Biff Burk") motion[4] for partial summary judgment as to third-party defendant Jacquelyn Burk's liability for any amounts found to be due from him. Jacquelyn Burk filed a response[5] in opposition, and Biff Burk filed a reply.[6] For the reasons set forth below, the Court grants Burgh Investment's motion for summary judgment and grants Biff Burk's motion for partial summary judgment.

---

[1] R. Doc. No. 51.
[2] R. Doc. No. 61.
[3] R. Doc. No. 68.
[4] R. Doc. No. 62.
[5] R. Doc. No. 69.
[6] R. Doc. No. 72.

## I. BACKGROUND

This case arises out of Biff Burk's alleged failure to make payments due to Burgh Investments pursuant to a Home Equity Line of Credit ("HELOC").[7] Biff Burk executed a HELOC agreement in January 2015.[8] Burgh Investments alleges that Biff Burk thereby "agreed to a credit account arrangement where he was bound to pay back advances, interest, and other charges to the Bank of New Orleans" or any other person or entity to whom the Bank of New Orleans assigned the HELOC agreement.[9] In September 2015, Home Bank, N.A. ("Home Bank") became the holder of the note ("the promissory note") through its acquisition of Bank of New Orleans' holding company.[10]

In its complaint, Burgh Investments alleges that it purchased the rights pursuant to the promissory note from Home Bank on August 30, 2024.[11] As of the date of purchase, Burgh Investments asserts that the account balance on the HELOC was a total of $935,752.05, including interest and attorney's fees.[12] Furthermore, Burgh Investments maintains that Biff Burk was required to make minimum payments on the account, which payments he failed to make.[13] Burgh Investments states that because Biff Burk allegedly failed to make the required minimum payments, the HELOC agreement allows Burgh Investments to terminate the

---

[7] R. Doc. No. 1, ¶¶ 6–11.
[8] *Id.* ¶ 6; R. Doc. No. 5, at 2.
[9] R. Doc. No. 1, ¶ 6.
[10] *Id.* ¶ 7; R. Doc. No. 5, at 2.
[11] R. Doc. No. 1, ¶ 11.
[12] *Id.* ¶ 10.
[13] *Id.* ¶ 8.

account and require Biff Burk to pay the entire outstanding balance as well as reasonable costs it incurred to collect the balance, including attorney's fees.[14]

In addition to his answer, Biff Burk filed a third-party complaint against his ex-wife Jacquelyn Burk and other parties.[15] Relevant to this motion, Biff Burk states that Jacquelyn Burk cosigned the HELOC agreement for the $900,000 line of credit.[16] Biff and Jacquelyn Burk divorced on July 26, 2016, and they thereby entered a consent judgment and settlement of claims (the "consent judgment") dividing certain assets and liabilities.[17] As part of that agreement, Biff Burk states that he and Jacquelyn Burk agreed to each assume responsibility for half of the debt owed on the $900,000 promissory note.[18] Jacquelyn Burk has allegedly failed to discharge her obligations with respect to the promissory note.[19]

Burgh Investments' motion for summary judgment argues that there is no dispute that Biff Burk signed the promissory note and that Burgh Investments is the holder of the promissory note.[20] Regarding Burgh Investments' demand for full payment, Burgh Investments states that Biff Burk did not make timely minimum

---

[14] *Id.* ¶¶ 12–13.

[15] R. Doc. No. 5, at 5–6. The Court previously dismissed Biff Burk's claims against his children William Richard Burk, IV and Sarah Lazaro, as will as certain affiliates of William Richard Burk, IV for lack of subject matter jurisdiction. *See* R. Doc. No. 35.

[16] R. Doc. No. 5, at 8–9. The Court previously dismissed Biff Burk's claims against Jacquelyn Burk related to another loan for lack of subject matter jurisdiction. *See* R. Doc. No. 35.

[17] R. Doc. No. 5, at 10–11; *see* R. Doc. No. 5-2.

[18] R. Doc. No. 5, at 11.

[19] *Id.* at 12.

[20] R. Doc. No. 51-1, at 8–9.

payments on the promissory note.[21] Because the terms of the promissory note allow Burgh Investments to terminate the account and require Biff Burk to pay the entire outstanding account balance because of this failure, as well as interest and reasonable costs incurred in collecting the account balance, Burgh Investments states that it is entitled to summary judgment with respect to the promissory note.[22]

Biff Burk's response acknowledges that summary judgment is appropriate on a promissory note where the debtor fails to establish a defense against enforcement. However, Biff Burk argues that there are material issues of fact regarding whether he is obligated to pay the account balance based on three asserted defenses.[23] First, Biff Burk argues that he is entitled to a defense of fraud based on Burgh Investments' allegedly fraudulent activity in acquiring the note.[24] Second, Biff Burk argues that the obligation of the note should be extinguished by confusion.[25] Lastly, Biff Burk argues that Burgh Investments is not a holder in due course pursuant to Louisiana's Uniform Commercial Code.[26]

Biff Burk filed his own motion for partial summary judgment against Jacquelyn Burk seeking to hold her liable for one half of any amount due to Burgh Investments based on the consent judgment entered into as part of Biff and Jacquelyn Burk's divorce.[27] Jacquelyn Burk's response argues that she was prepared to satisfy

---

[21] *Id.* at 9.
[22] *Id.* at 9–11.
[23] R. Doc. No. 61, at 6.
[24] *Id.* at 10–12.
[25] *Id.* at 16.
[26] *Id.* at 12.
[27] R. Doc. No. 62.

her half of the promissory note in the summer of 2024 when the principal amount of the loan was lower.[28] Because Biff Burk allegedly refused to satisfy his half of the obligation at that time, and thereby allegedly breached their agreement, Jacquelyn Burk argues that Biff Burk should be estopped from now relying on the community property settlement agreement to demand payment from her.[29]

## II. STANDARD OF LAW

Summary judgment is proper when, after reviewing the materials in the record, a court determines that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a

---

[28] R. Doc. No. 69, at 1.
[29] *Id.*

genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine dispute is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the nonmovant fails to meet its burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255. "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *JW Dev., LLC v. Indep. Specialty Ins. Co.*, No. CV 22-390, 2022 WL 3139133, at *1 (E.D. La. Aug. 5, 2022) (Africk, J.) (quoting *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017)).

### III. ANALYSIS

### a. Burgh Investments' Motion

Burgh Investments' motion for summary judgment argues that there is no dispute that Biff Burk signed the promissory note and that Burgh Investments is the holder of the note.[30] Biff Burk has not made timely minimum payments on the promissory note.[31] Because of the missed payments, Burgh Investments argues that the terms of the HELOC agreement allow it to terminate the account and require Biff Burk to pay the entire outstanding account balance as well as interest and reasonable costs incurred in collecting the account balance.[32] On this basis, Burgh Investments argues that it is entitled to summary judgment holding Biff Burk liable for the $935,752.05 account balance; additional interest after August 30, 2024 as outlined in the HELOC agreement; and costs of these proceedings.[33]

Biff Burk's response does not deny that he assumed the debt on the promissory note, that Burgh Investments is the holder of the note, or the amount that is owned on the promissory note. He does not dispute that he did not make minimum payments towards the promissory note, arguing instead that his son William Richard Burk, IV ("Billy Burk") was responsible for making the payments pursuant to a separate agreement.[34] Lastly, he does not dispute that the terms of the promissory note allow

---

[30] R. Doc. No. 51-1, at 8–9.
[31] *Id.* at 9.
[32] *Id.* at 9–10.
[33] R. Doc. No. 51, at 1. Burgh Investments also reserves its rights to make a claim for attorney's fees. *Id.*
[34] R. Doc. No. 61-1, at 3.

Burgh Investments to require payment of the entire balance along with interest and reasonable costs as a result of this failure.[35]

Instead, Biff Burk argues that summary judgment is inappropriate because there are genuine disputes of material fact regarding whether Biff Burk has a defense against the enforcement of the note. In particular, and as mentioned previously, Biff Burk argues that Burgh Investments committed fraud in acquiring the note and that the obligations of the note should be extinguished by confusion.[36] Additionally, Biff Burk argues that Burgh Investments is not a holder in due course.[37]

Pursuant to the Louisiana Uniform Commercial Code, the holder of an instrument is entitled to enforce that instrument.  La. R.S. 10:3-301. "In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings." La. R.S. 10:3-308(a). "If the validity of signatures is admitted or proved . . . a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under R.S. 10:3-301, unless the defendant proves a defense or claim in recoupment." La. R.S. 10:3-308(b).

Based on this statutory framework, Louisiana courts have concluded that the holder of a note is entitled to summary judgment in cases where the signature on the note is undisputed unless the defendant establishes a contractual defense. *See, e.g., Am. Bank v. Saxena*, 553 So. 2d 836, 844–46 (La. 1989) (concluding that summary

---

[35] R. Doc. No. 61-1, at 3.
[36] R. Doc. No. 61, at 1.
[37] *Id.*

8

judgment in favor of the plaintiff to enforce a promissory note was appropriate where the defendant admitted the debt and failed to establish a defense). Because Biff Burk does not dispute his signature on the promissory note or that Burgh Investments is the holder of the note, Burgh Investments is entitled to enforce the note unless Biff Burk can establish that there is a genuine dispute of material fact regarding his entitlement to a contractual defense. The Court addresses each of Biff Burk's asserted defenses in turn.

  i.    *Fraud*

Regarding its defense of fraud, Biff Burk states that his son Billy Burk is Burgh Investments' president and sole officer.[38] Prior to forming Burgh Investments, Billy Burk allegedly made an agreement with Biff Burk whereby Billy Burk agreed that he would make the payments on the promissory note.[39] When the promissory note was due, Biff Burk alleges that he made an amicable demand for Billy Burk to fulfill his obligation to pay down the note.[40] Rather than repaying, Biff Burk alleges that Billy Burk formed Burgh Investments in order to acquire the promissory note and avoid his payment obligations.[41]

Burgh Investments allegedly made several misrepresentations through this process, including misrepresenting that its business purpose was for real estate and misrepresenting that its acquisition of the note did not violate any other

---

[38] *Id.* at 4.
[39] *Id.* at 2–3.
[40] *Id.* at 3.
[41] *Id.* at 4.

agreements.[42] In particular, Biff Burk suggests that Burgh Investments breached the agreement between Biff and Billy Burk regarding repayment of the note because it was an attempt to escape responsibility to repay the note.[43] Biff Burk argues that Billy Burk's actions through Burgh Investments in acquiring the promissory note constituted fraud.[44]

Louisiana law recognizes fraud as an affirmative defense to a breach-of-contract claim by vitiating the defendants' consent to the contract. *See* La. C.C. art. 1948. Fraud is defined as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other," which "may result from silence or inaction." La. C.C. art. 1953. Because fraud acts as an affirmative defense by vitiating consent, courts consider representations at the time that a contract is made. *See, e.g.*, *KeyBank Nat. Ass'n v. Perkins Rowe Assocs., Inc.*, No. CIV. A. 09-497, 2011 WL 1457210, at *3 (M.D. La. Apr. 15, 2011) ("As a threshold matter, because fraud acts as an affirmative defense to a breach of contract action by vitiating the defendant's consent to the contract, the court need not consider representations made after July 21, 2006—the date the parties entered the loan agreement.").

"Fraud committed by a third person vitiates the consent of a contracting party if the other party knew or should have known of the fraud." La. C.C. art. 1956. Thus, courts have concluded that fraud committed by a person who is not a party to the

---

[42] *Id.* at 11.
[43] *Id.* at 11–12.
[44] *See id.* at 9–12.

contract did not vitiate consent where the other party to the agreement neither knew nor could have known about the fraud. *See, e.g.*, *Smith v. Frey*, 703 So. 2d 751, 752–53 (La. Ct. App. 1997) (concluding that fraud committed by a plaintiff's attorney when negotiating a settlement agreement did not vitiate consent because the defendant acted in good faith in negotiating the settlement agreement, and the plaintiff did not suggest that the defendant knew or should have known about the fraud); *Ramos v. Swiftships Shipbuilders, LLC*, No. CIV. A. 13-2861, 2015 WL 5024641, at *8 (W.D. La. Aug. 21, 2015) (concluding that the affirmative defense of fraud did not apply when the alleged fraud was committed by the defendants' own employee and where the defendant did not suggest that the plaintiff knew or should have known about the fraud).

Here, both Burgh Investments and Biff Burk agree that the original HELOC agreement was executed with the Bank of New Orleans.[45] While Biff Burk alleges that Billy Burk and Burgh Investments acted fraudulently, nowhere does Biff Burk suggest any fraudulent activity by the Bank of New Orleans. Nor does Biff Burk suggest that the Bank of New Orleans knew or should have known about any of the alleged fraudulent activity. Indeed, all of the fraudulent activity that Biff Burk alleges concerns Burgh Investments acquisition of the promissory note, which occurred in August 2024—more than nine years after the original HELOC agreement in January 2015. Because Biff Burk's allegations of fraud do not concern the original parties to the HELOC agreement and concern only actions taken long after the

---

[45] *See* R. Doc. No. 1, ¶ 6; R. Doc. No. 61, at 2.

original agreement, these alleged actions cannot vitiate Biff Burk's consent to the agreement. Biff Burk has not established an affirmative defense of fraud.

    *ii.*    *Confusion of the Debt*

Biff Burk next argues that the debt should be extinguished by confusion.[46] He bases this argument on his allegation that Billy Burk agreed to pay back his parents for the promissory note, which was entered into for his benefit.[47] Because Billy Burk has now acquired the promissory note through his company Burgh Investments, Biff Burk argues that Billy Burk is both the obligee and obligor on the promissory note.[48]

Pursuant to Louisiana law, "[w]hen the qualities of obligee and obligor are united in the same person, the obligation is extinguished by confusion." La. C.C. art 1903. "If a solidary obligor becomes an obligee, confusion extinguishes the obligation only for the portion of that obligor." La. C.C. art 1905. Likewise, "[i]f a solidary obligee becomes an obligor, confusion extinguishes the obligation only for the portion of that obligee." *Id.*

However, the same person must be both the obligee and obligor with respect to the same obligation. Thus, in *Worldwide Remediation, Inc. v. Onebane, Bernard, Torian, Diaz McNamara & Abell L. Firm*, the Fifth Circuit affirmed the district court's determination that confusion did not extinguish obligations where the parties "were both obligor and obligee of each other, but neither party was both obligor and obligee with respect to any one obligation." 211 F.3d 948, 951 (5th Cir. 2000).

---

[46] *Id.* at 1.
[47] *Id.* at 2–3.
[48] *Id.* at 1.

As the Court noted in a previous order and reasons,[49] Billy Burk's and Sarah Lazaro's alleged obligations to their parents come from agreements separate and apart from the promissory note and the HELOC agreement. Billy Burk is not listed as a party to the HELOC agreement, and he is not a signatory to the agreement.[50] Furthermore, the HELOC provides that Biff and Jacquelyn Burk are not permitted to assign or transfer any rights or duties.[51] Indeed, Biff Burk states that his agreement with Billy Burk to repay portions of the $900,000 promissory note was an oral agreement, separate from the promissory note.[52] Even accepting Biff Burk's allegations that there is a basis to pierce the corporate veil and treat Burgh Investments as the alter ego of Billy Burk—Billy and Biff Burk would merely be both obligee and obligor of each other as to separate agreements. Similar to *Worldwide*, there is therefore no basis to extinguish the debt by confusion.

  *iii.*  *Holder in Due Course*

  Biff Burk lastly argues that Burgh Investments is not entitled to enforce the note because it is not a holder in due course.[53] The holder of an instrument is a holder in due course if

> (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
>
> (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is

---

[49] *See* R. Doc. No. 35, at 10.
[50] R. Doc. No. 51-3, at 1, 4, 7.
[51] *Id.* at 4.
[52] *See* R. Doc. No. 61, at 2–3, 17.
[53] *Id.* at 12–13.

an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in R.S. 10:3-306, and (vi) without notice that any party has a defense or claim in recoupment described in R.S. 10:3-305(a).

La. R.S. 10:3-302.

Against a holder in due course, an obligor is limited to certain defenses set forth in La. R.S. 10:3–305, including duress, illegality of the transaction, fraud, and discharge of the obligor in insolvency proceedings. *See* La. R.S. 10:3-305(a)–(b). "The primary benefit of holder in due course status is freedom from most defenses . . . ." *Whittington v. Patriot Homes, Inc.*, No. CIVA 06-1068, 2008 WL 1736820, at *6 (W.D. La. Apr. 11, 2008). Because Biff Burk has failed to establish a defense to Burgh Investments' claims, it is immaterial whether Burgh Investments is a holder in due course. *See Wright v. Blue*, No. CV 16-9405, 2016 WL 4799102, at *5 (E.D. La. Sept. 13, 2016) (Brown, J.) ("Here, however, it is not necessary for the Court to determine if Wright is a holder in due course, because Blue has failed to meet his burden to prove any of the raised defenses . . . .").

Because Biff Burk is not entitled to any of his asserted defenses, Burgh Investments is entitled to summary judgment with respect to its claims on the promissory note. The Court will enter judgment against Biff Burk for the $935,752.05 account balance; additional interest after August 30, 2024 as outlined in the HELOC agreement; and the costs of these proceedings, including attorney's fees.

### b.  Biff Burk's Motion

In the event that Biff Burk is found liable to Burgh Investments for payment of the promissory note, Biff Burk argues that Jacquelyn Burk should be found liable for one half of any amount owed.[54] Biff Burk states that Jacquelyn Burk is a co-obligor on the promissory note and that they share joint and several liability for the loan.[55] When Biff and Jacquelyn Burk divorced in 2016, Biff Burk alleges that they entered into a consent judgment whereby they each agreed to assume legal responsibility for one half of the $900,000 promissory note.[56] They likewise agreed to indemnify each other with respect to their partitioned liabilities, including with respect to attorney's fees and costs.[57] Biff Burk therefore states that he has a right to enforce Jacquelyn Burk's obligation for one half of any amount owed to Burgh Investments.[58]

The HELOC agreement provides that each borrower's obligations are "joint, several and solidary with all other Borrowers."[59] Pursuant to Louisiana law, "[a] failure to perform a solidary obligation through the fault of one obligor renders all the obligors solidarily liable for the resulting damages." La. C.C. art. 1800. "In that case, the obligors not at fault have their remedy against the obligor at fault." *Id.* "Among solidary obligors, each is liable for his virile portion." La. C.C. art. 1804. When the obligation arises from a contract, "virile portions are equal in the absence

---

[54] R. Doc. No. 62, at 1.
[55] R. Doc. No. 62-1, at 2, 6.
[56] *Id.* at 2–3.
[57] *Id.* at 2.
[58] *Id.* at 7.
[59] R. Doc. No. 62-5, at 21.

of agreement or judgment to the contrary." *Id.* "An obligee, at his choice, may demand the whole performance from any of his solidary obligors." La. C.C. art. 1795. However, "[a] party sued on an obligation that would be solidary if it exists may seek to enforce contribution against any solidary co-obligor by making him a third party defendant according to the rules of procedure, whether or not that third party has been initially sued . . . ." La. C.C. art. 1805.

In this case, Burgh Investments exercised its option to demand a full performance of the promissory note by Biff Burk. In response, Biff Burk seeks to enforce its right to contribution from Jaquelyn Burk, which right is subject to the terms of the consent judgment between Biff and Jacquelyn Burk.

In her response to Biff Burk's motion, Jacquelyn Burk states that Biff Burk should be estopped from relying on the consent judgment to demand repayment.[60] As her basis for this argument, Jacquelyn Burk states that she was willing to pay $450,000 towards the principal that she agreed to assume in August 2024 but that Biff Burk refused to pay his half of the obligation, leading to the instant lawsuit.[61] Jacquelyn Burk thereby argues that she should not be compelled to comply with the community property agreement after Biff Burk failed to comply with the requirements of that agreement.[62] In the alternative, Jacquelyn Burk argues that she should not be required to indemnify Biff Burk for the increased costs that are due on

---

[60] R. Doc. No. 69, at 1.
[61] *Id.* at 6.
[62] *Id.*

the promissory note as a result of Biff Burk's failure to repay the loan in August 2024.[63]

### i.    Refusal To Perform a Commutative Contract

Jacquelyn Burk's first argument appears to be that the consent judgment is a commutative contract and that she may refuse to perform her obligation because Biff Burk has failed to perform his obligation.[64] A commutative contract is a contract where "the performance of the obligation of each party is correlative to the performance of the other." La. C.C. art 1911. In other words, a commutative contract is a contract in which "what is done, given or promised by one party, is considered as equivalent to, or a consideration for what is done, given or promised by the other." *Southside Plantation Co. v. Fabacher*, 12 Teiss. 418, 419 (La. Ct. App. 1915).

"Either party to a commutative contract may refuse to perform his obligation if the other has failed to perform or does not offer to perform his own at the same time, if the performances are due simultaneously." La. C.C. art 2022. However, a party may only refuse to perform as a result of the other's failure to perform "where the performances of the parties are to be rendered simultaneously, either because the contract so provides, or because the contract by its nature demands simultaneous performances." La. C.C. art. 2022, rev. cmt. (c). Such a refusal to perform is not permitted "where the performances are not to be rendered simultaneously." *Id.*

---

[63] *Id.* at 6–7.
[64] *Id.* at 4.

The portions of the consent judgment dealing with the $900,000 promissory note state that "[e]ach party . . . is legally responsible for payment of one-half of the $900,000 obligation."[65] Furthermore, "[e]ach party has the same co-equal obligation to repay [the obligation] in equal sums."[66] The agreement does not contain a provision requiring simultaneous performance. Nor does the agreement by its nature require simultaneous performance with respect to the $900,000 promissory note. Accordingly, Biff Burk's failure to pay his half of the $900,000 promissory note simultaneously with Jacquelyn Burk's offer to do so in 2024 does not provide a basis for Jaquelyn Burk to refuse to perform her obligation.

Furthermore, even if Jaquelyn Burk were permitted to refuse to perform her obligations under the consent judgment pursuant to Louisiana Civil Code Article 2022, her remedy would be a rescission of the obligations in the consent judgment. *See Groner Apartments v. Controlled Bldg. Systems*, 432 So.2d 1142, 1145 (La. Ct. App. 1983). She would still be liable for the solidary obligations of the HELOC agreement because the consent judgment did not alter her underlying obligations pursuant to that agreement. Notably, Biff Burk would retain his right to enforce Jacquelyn Burk's contribution to their solidary obligation pursuant to Louisiana Civil Code Article 1805. And in the absence of a contract outlining their respective liabilities, Jaquelyn Burk's virile portion, for which she would be liable, would be presumed to be one half of any amounts due pursuant to the HELOC agreement. *See*

---

[65] R. Doc. No. 62-6, at 19.
[66] *See id.*

La. C.C. art. 1804. Accordingly, even if Jaquelyn Burk were permitted to refuse to perform her consent judgment obligations, her obligations with respect to the promissory note would be the same.

    ii.    *Indemnity Provisions*

In the alternative, Jacquelyn Burk argues that the plain language of the consent judgment "does not require her to indemnify or hold Biff [Burk] harmless for the increased costs that result from his own actions."[67] The consent judgment states that the parties will assume all obligations and liabilities partitioned to him or her to the full indemnification of the other, "including, without limitation, attorney's fees and costs . . . except as otherwise stated in that stipulation entered into on June 10, 2019, as Joint Exhibit No. 1."[68] In joint exhibit 1 of the consent judgment—which concerns the Home Bank loans—the indemnity provision states merely that "the parties indemnify and hold each other harmless" with respect to those obligations.[69] There is no mention of attorney's fees and costs. Jacquelyn Burk therefore argues that she is not required to reimburse Biff Burk "for the costs that resulted from his own ill-advised decision not to honor his obligations."[70]

Nothing in joint exhibit 1 provides that attorney's fees and costs are not part of the parties' indemnity obligations. Therefore, nothing conflicts with the inclusion of attorney's fees and costs in the consent judgment's general indemnity provision.

---

[67] R. Doc. No. 69, at 6.
[68] R. Doc. No. 62-6, at 4, 6.
[69] *Id.* at 19.
[70] R. Doc. No. 69, at 7–8.

Furthermore, the consent judgment includes additional provisions, which more specifically apply responsibility for attorney's fees and costs to the Home Bank loans, including the promissory note. Joint exhibit 1 concerns the parties Home Bank debts, that is loan numbers X-1007 and X-7634.[71] The consent judgment does not specify which of these loans is the $900,000 promissory note and which is the separate $500,000 loan not at issue in this lawsuit. However, the parties specifically agreed to indemnify each other for attorney's fees and costs for both loans.[72] The plain language of the consent judgment therefore requires Jacquelyn Burk to assume responsibility for the attorney's fees and costs as well as the balance of the loan.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Burgh Investments' motion for summary judgment is **GRANTED**. Biff Burk shall pay Burgh Investments for the outstanding account balance of $935,752.05; additional interest after August 30, 2024 to be calculated in accordance with the HELOC agreement; and the costs of these proceedings, including reasonable attorney's fees.

**IT IS FURTHER ORDERED** that Biff Burk's motion for partial summary judgment is **GRANTED**. Jacquelyn Burk shall contribute one half of the total amount that Biff Burk owes to Burgh Investments.

---

[71] *Id.* at 7.
[72] *Id.* at 2–3, 6.

**IT IS FURTHER ORDERED** that Burgh Investments shall make any motion for attorney's fees within 14 days of a final judgment. Should Burgh Investments file such a motion, it shall include detailed records of hours expended, hourly billing rates, and costs.

**IT IS FURTHER ORDERED** that the parties shall meet and confer in attempt to resolve any dispute regarding attorney's fees. The parties shall attempt to stipulate as to any facts that will assist the Court in making a determination.

**IT IS FURTHER ORDERED** that the parties shall schedule a settlement conference with the U.S. Magistrate Judge to take place within 30 days to attempt to resolve any disputes regarding attorney's fees.

New Orleans, Louisiana, June 2, 2025.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**